Order, Supreme Court, New York County (Donna M. Mills, J.), entered April 12, 2012, which, after a jury trial, granted defendant/second third-party plaintiff Consolidated Edison Company of New York, Inc.’s motion for full contractual indemnification from second third-party defendant Roadway Contracting, Inc., unanimously reversed, on the law, without costs, and the motion denied.
On May 26, 2002, plaintiff Joseph LaMorte was injured while riding a bicycle on Seventh Avenue between 21st and 22nd Streets in Manhattan. In January 2001, second third-party defendant Roadway Contracting, Inc. had performed road work in that spot under a contract with second third-party plaintiff Consolidated Edison Company of New York, Inc. (Con Edison).
A little more than one year before the injured plaintiffs accident, Con Edison and Roadway entered into the contract, dated January 31, 2001, which consisted of a term purchase order agreement (the purchase order) and a document entitled “Standard Terms and Conditions of Construction Contracts” (the standard terms). Under the contract’s terms, Roadway agreed to install underground conduits and telecommunications equipment boxes as needed during the period from December 18, 2000 to December 17, 2002. Neither party signed either the standard terms or the purchase order.*
The standard terms contained both a contractual indemnification provision and an insurance procurement provision. The indemnification provision required Roadway to defend and indemnify Con Edison for any liability arising out of Roadway’s work, and to pay for Con Edison’s legal expenses associated with that work. The insurance provision, in turn, required Roadway to buy insurance, including a $5 million comprehensive general liability (CGL) policy naming Con Edison as an additional insured and insuring Con Edison against its own *440 negligence. Further, the insurance provision stated that Roadway was obliged to carry products/completed operations liability insurance “for at least one year after completion of performance hereunder.” The purchase order referred to the insurance clause, stating that “[Roadway] shall comply with Con Edison insurance requirements.” However, the purchase order did not refer to the indemnification provision. Roadway procured a $1 million CGL policy from United National Insurance Company.
In 2002, plaintiffs commenced an action against Con Edison to recover damages for personal injuries. At the trial in that action, Con Edison took the position that Roadway’s work had caused the accident. The jury rendered a verdict for $660,000 in plaintiffs’ favor, finding the injured plaintiff 40% at fault, Con Edison 35% at fault (for a total of $231,000), and Roadway 25% at fault (for a total of $165,000).
After the jury rendered its verdict, Con Edison moved for full indemnification from Roadway for the entire verdict amount and for Con Edison’s counsel fees, arguing that under the indemnification provision in the parties’ contract, it was entitled to such an award. Con Edison asserted that full indemnification did not violate General Obligations Law § 5-322.1, which limits indemnification clauses in construction contracts. Rather, Con Edison asserted, although an indemnification clause is unenforceable as applied to liability arising from the indemnitee’s own negligence, a contract can require another to obtain insurance covering such liability. Thus, Con Edison concluded, Roadway was liable for full indemnification because it had breached the portion of the contract requiring it to obtain insurance naming Con Edison as an additional insured.
Roadway offered several arguments in opposition, only one of which is relevant on this appeal — namely, that, assuming there was a valid contract, Roadway had not, in fact, breached the contract provision requiring it to make Con Edison an additional insured. Rather, Roadway argued, it had no obligation to maintain insurance past January 26, 2002, one year after it completed the injury-causing road work. Indeed, Roadway noted, Con Edison had ordered it off the work site on January 26, 2001 because its work had caused a water leak, and Roadway performed no further work for Con Edison after that date.
To begin, under the circumstances presented here, Roadway did not breach its duty, under either the purchase agreement or the standard terms, to procure insurance naming Con Edison as an additional insured with respect to plaintiffs’ injuries. The standard terms specify that Roadway was obliged to maintain a *441 products/completed operations insurance policy for “at least one year after completion of performance hereunder.” While the purchase order states that the contract term ran for a two-year period from December 2000 until December 2002, the work that caused plaintiffs’ injuries took place on January 26, 2001. Therefore, Roadway’s duty to maintain insurance with Con Edison as an additional insured ended on January 26, 2002, one year after Roadway finished its work under the contract and approximately four months before the injured plaintiff s May 2002 accident (see Regno v City of New York, 88 AD3d 610 [1st Dept 2011]). Indeed, as Roadway notes, the record shows that Roadway performed no work for Con Edison at all after Con Edison ordered it off the Seventh Avenue work site on January 26, 2001.
Con Edison asserts that the contract imposed a duty on Roadway to maintain insurance in favor of Con Edison until one year after the full contract term ended — that is, until December 17, 2003. We reject this argument, as it has no basis in the contract’s language. On the contrary, although the contract does not define “performance,” its language strongly suggests that the terms “perform” or “performance” refer to the actual physical labor that Roadway was hired to do, not just to Roadway’s theoretical availability to perform work for Con Edison. For example, paragraph 9 of the standard terms, entitled “Contractor’s Performance,” provides that Roadway “shall perform in good workmanlike manner and in accordance with best accepted practices in the industry all the Work specified or reasonably implied in the Contract” and directs that Roadway “shall provide a full time on-site representative.” Similarly, in specifying the manner of performance, the standard terms provide that “all equipment, tools, other construction aids and materials utilized by [Roadway] shall be of high quality and in good working order.” Concur — Gonzalez, P.J., Friedman, Moskowitz, DeGrasse and Freedman, JJ.

 At trial, the contract was admitted into evidence without objection. The face of the purchase order stated that the “Current Date” was December 1, 2005. This date appears to represent the date that the purchase order was printed.